IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERICA SHOOK and DAVID SHOOK, Individually and as Parents and Next Friends of minors L.S. and D.S.,<br><br>    Plaintiff,<br><br>v.<br><br>GLEUE HARVESTING, LLC a/k/a and/or d/b/a GLEUE HARVESTING a/k/a and/or d/b/a GLEUE a/k/a and/or d/b/a GLEUE TRUCKING, LLC a/k/a and/or d/b/a GLEUE TRUCKING a/k/a and/or d/b/a GLEUE FARMS, LLC a/k/a and/or d/b/a GLEUE FARMS a/k/a and/or d/b/a GLUE FARMS & CATTLE LLC a/k/a and/or R&H GLEUE INC., KERRI RENEE GLEUE a/k/a KERRI R. GLEUE a/k/a KERRI GLEUE, FREDERIK HENDRICK BOUWER a/k/a FREDERIK H. BOUWER a/k/a FREDERIK BOUWER a/k/a FRED BOUWER, JOHN DOE, a business entity JANE DOE, an individual,<br><br>    Defendants. | 4:22-CV-00208-JAR-SH |

**OPINION AND ORDER**

Jane A. Restani, Judge[*]:

    Before the court is the motion to dismiss, or, in the alternative, the motion to transfer venue to the United Stated District Court for the District of Kansas filed by defendants Gleue Harvesting, LLC, Gleue Trucking, LLC, Gleue Farms, LLC, Gleue

---

[*] Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

1

Farms & Cattle, LLC, R & H Gleue Inc., Kerri Renee Gleue, Frederik Henrick Bouwer, John Doe, a business entity, and Jane Doe, an individual (collectively, "the Gleue Companies"). Def.'s Special Appearance and Mot. Dismiss, or, in the Alternative, Mot. Transfer Venue, ECF No. 7 (May 16, 2022) ("Def.'s MTD"). In their motion, the Gleue Companies assert that the court lacks personal jurisdiction over them. Def.'s MTD at 1. In the alternative, the Gleue Companies move for the court to transfer this action to the District of Kansas as a more convenient venue. Id. at 1–2. Plaintiffs Erica Shook and David Shook (collectively, "the Shooks") oppose the motion. Pl.'s Resp. Opp'n to Def.'s Mot. Dismiss, or, in the Alternative, Mot. Transfer at 1, ECF No. 18 (June 21, 2022) ("Pl.'s Br."). For the following reasons, the Gleue Companies' motion to dismiss is granted in part and denied in part, and the motion to transfer venue is denied.

## BACKGROUND

This case has a complex factual background, and the court recounts here only the facts relevant to the Gleue Companies' motion to dismiss and the questions of personal jurisdiction and venue. The following facts are undisputed from the record.

On October 9, 2021, two motor vehicles collided. David Shook drove the first vehicle, with wife Erica Shook and their two children L.S. and D.S. as passengers. Pl.'s Br. at 1. Fredrick Bouwer, a citizen of South Africa and an employee of Gleue Harvesting, LLC, drove the second vehicle, a tractor-trailer owned by Kerri Gleue. Def.'s MTD at 2. The collision took place in Labette County, Kansas, near the intersection of U.S. Route 400 and Wallace Road, approximately 25 miles north of the

border between Kansas and Oklahoma. Pl.'s Br. at 1. Following the collision, David Shook, Erica Shook, and L.S. were taken to Parsons, Kansas, for treatment of their immediate injuries, and then the Shooks returned to Oklahoma for surgery and further treatment from a physical therapist, chiropractor, and pediatrician. Def.'s MTD Ex. 10; Pl.'s Br. at 19.

David Shook, Erica Shook, L.S., and D.S. are residents and citizens of Oklahoma. Pl.'s Br. at 1. Frederick Bouwer is a citizen of South Africa and was a temporary resident of Kansas at the time of the collision. Def.'s MTD Ex. 3. Gleue Harvesting, LLC is incorporated in Kansas and claims LeRoy, Kansas, as its principal place of business. Def.'s MTD Ex. 3. Kerri Gleue is the single member manager of Gleue Harvesting, LLC and resides in LeRoy, Kansas. Def.'s MTD Ex. 4. Gleue Trucking, LLC, Gleue Farms, LLC, Gleue Farms and Cattle, LLC, and R & H Gleue Inc. (collectively, "the Other Gleue Defendants") are all incorporated in Kansas, claim LeRoy, Kansas, as their principal place of business, and are member operated LLCs whose members are citizens of Kansas and Virginia. Def.'s MTD Ex. 5–8.

In 2020 and 2021, Gleue Harvesting, LLC completed several contracts in Oklahoma. See, e.g., Pl.'s Br. Ex. 2 (Facebook post about working in Oklahoma on May 23, 2020); Pl.'s Br. Ex. 3 (Facebook post about going to Oklahoma on July 24, 2020); Pl.'s Br. Ex. 4 (Facebook post about "keeping busy from Oklahoma all the way through to Southeast Kansas" on August 22, 2020); Pl.'s Br. Ex. 5 (Facebook post stating "Oklahoma has been keeping us busy" on May 8, 2021); Def.'s MTD at 11 (admitting that Gleue Harvesting, LLC did two silage cutting jobs in Anadarko,

3

Oklahoma, in 2021, each lasting less than three weeks). Additionally, the Shooks alleges that defendants "travel to Oklahoma and Texas for business to make ends meet." Pl.'s Br. at 3.

The collision had one eyewitness, Randy Wagnon Jr., who resides in Claremore, Oklahoma. Pl.'s Br. at 18. Several witnesses that the Shooks anticipate calling, including the Oklahoma treating physicians and family friends, reside in Oklahoma. Pl.'s Br. at 19–20. The Gleue Companies allege that the emergency personnel who responded to the collision reside in Parsons, Kansas. Def.'s MTD at 23.

## STANDARD OF REVIEW AND BURDEN OF PROOF

When a defendant moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint

4

must be accepted as true unless they are contradicted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (citation omitted). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id. (citation omitted).

## DISCUSSION

### I. Personal Jurisdiction

#### A. Applicable Law

A federal district court may exercise jurisdiction over a properly served defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The Supreme Court has distinguished between two types of personal jurisdiction: general and specific. See Daimler AG v. Bauman, 571 U.S. 117, 126–27 (2014). A court can exercise general jurisdiction over any claims against defendants who are "essentially at home" there, id. at 127 (internal quotation marks omitted), as when an individual is domiciled in the State or a corporation is incorporated or has its principal place of business there, see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021).

Specific jurisdiction over nonresident defendants is proper if an applicable statute authorizes service of process and if the exercise of jurisdiction comports with constitutional due process. Hood v. American Auto Care, LLC, 21 F.4th 1216, 1220 (10th Cir. 2021). Oklahoma's long-arm statute authorizes service of process and provides that an Oklahoma court "may exercise jurisdiction on any basis consistent

with the Constitution of this state and the Constitution of the United States." Okla. Stat. tit. 12, § 2004(F). Because "[n]o party has argued any state constitutional objection," the relevant inquiry on appeal is "whether the United States Constitution places any limits on Oklahoma's ability to exercise jurisdiction" over defendants. Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013).

The due process clause of the Fourteenth Amendment requires that a nonresident defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 315–16 (1945) (quotation omitted). These minimum contacts must "proximately result from actions by the defendant himself which create a substantial connection with the forum State." Burger King Corp., 471 U.S. at 475 (quotation and emphasis omitted). "The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 112 (1987) (quotation, citation, and emphasis omitted). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" Ford Motor Co., 141 S. Ct. at 1024 (quoting Burger King, 471 U.S. at 475). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Id. at 1025 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).

The contacts, however, need not strictly cause the controversy at issue. A state's courts may have jurisdiction "because of another activity or occurrence involving the defendant that takes place in the State." Id. at 1026–27 (alteration and quotation omitted). Specific jurisdiction "is premised on something of a quid pro quo: in exchange for benefitting from some purposeful conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1078 (10th Cir. 2008) (quotation omitted). Thus, so long as the contacts that give rise to the controversy are the same type of contacts the defendant purposefully directed at a state, the court has jurisdiction over the defendant. Hood, 21 F.4th at 1225 ("[J]urisdiction is proper when a resident is injured by the very type of activity a nonresident directs at residents of the forum state—even if the activity that gave rise to the claim was not itself directed at the forum State.").

If a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." Asahi, 480 U.S. at 105. The court considers several factors as part of this analysis, including: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477. Nevertheless, instances where an otherwise

7

valid exercise of personal jurisdiction would be constitutionally unfair are "rare." Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., 970 F.3d 1269, 1289 (10th Cir. 2020) (quotation omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.

**B. Analysis**

The Shooks argue that the Gleue Companies consented to the personal jurisdiction of the court and that the court may exercise general personal jurisdiction over the Gleue Companies. Pl.'s Br. at 5–14. Neither argument is valid. Regarding whether the Gleue Companies consented to personal jurisdiction, the Shooks contend that by designating an agent for service of process in Oklahoma pursuant to the Motor Carrier Act, 49 U.S.C. § 13304(a), the Gleue Companies consented to be sued in Oklahoma. See generally Pl.'s Br. at 5–10. This argument fails, as no language in the Motor Carrier Act requires those in compliance to consent to jurisdiction. See 49 U.S.C. § 13304(a). Designation of an agent, alone, does not create consent to the jurisdiction of a forum.[1] Similarly, the court cannot exercise general jurisdiction over

---

[1] Although the Tenth Circuit has not addressed this issue, a majority of courts around the country have held the Motor Carriers Act does not grant jurisdiction. See 49 U.S.C. § 13304(a); see, e.g., Webb v. Brandon Exp., Inc., 2009 WL 5210097 (D. Colo. Dec, 23, 2009); Landreville v. Joe Brown Co., Inc., 2008 WL 910009 (E.D. Penn. Apr. 2, 2008); cf. Brown v. Lockheed Martin Corp., 814 F.3d 619, 638–39 (2d Cir. 2016) (concluding that consent-through-registration raises due process concerns); Aclin v. PD-RX Pharm. Inc., 189 F. Supp. 3d 1294, 1305–06 (W.D. Okla.

8

the Gleue Companies as none of the defendants are "at home" in Oklahoma either through domicile, headquarters, or incorporation. See supra Part I.

Nevertheless, the court considers whether it may exercise specific personal jurisdiction over the Gleue Companies. The facts supporting specific personal jurisdiction over each individual party are related, but the court must be careful to distinguish between the individual defendants so as not to conflate one entity's contacts with another's. Ergo, the court will analyze the motion to dismiss as applied to each group of related defendants.

### i. Defendants Kerri Gleue and Gleue Harvesting, LLC

First, the court finds that the assertion of specific personal jurisdiction over Kerri Gleue and Gleue Harvesting, LLC is appropriate. Under Hood, a state's courts may have specific personal jurisdiction over party that has previously directed contacts at the state, so long as the activity giving rise to the controversy is the same type of activity previously directed at the state. See Hood, 21 F.4th at 1225. Here, defendants Kerri Gleue and Gleue Harvesting, LLC were operating a tractor-trailer as a part of work on a nearby field. Def.'s MTD at 1, 18. This is precisely the same action defendants Kerri Gleue and Gleue Harvesting, LLC undertake and direct at the forum state whenever they work in Oklahoma or drive through Oklahoma to work in Texas. See Pl. Br. Ex. 2–5. Furthermore, the Shooks allege uncontested facts

---

2016) (analyzing a similar statute silent on the issue of if registration constitutes consent to jurisdiction); but see, e.g., Ocepek v. Corporate Transport, Inc., 950 F.2d 556 (8th Cir. 1991); Ayers v. Tanami Trading Corp., 2009 WL 1362402 (D. Utah May 14, 2009).

sufficient to show this action happens multiple times each year, although defendants argue their work in Oklahoma is a relatively small part of their overall revenue. See Pls. Br. Ex. 2–5; Def.'s MTD at 11 n.11 ("The silage jobs for two neighbors in Anadarko, Oklahoma encompassed under 5% of Defendant Gleue Harvesting, LLC's revenue for 2021").

The question is whether granting jurisdiction based on these contacts would comport with notions of fair play and substantial justice. The court finds that it does. The collision did not happen in some far-off state, but just 25 miles north of the border with Oklahoma. Pl.'s Br. at 1. In fact, Parsons, Kansas, is closer to the federal courthouse in Tulsa, Oklahoma, than any federal courthouse in Kansas.[2] Defendants Kerri Gleue and Gleue Harvesting, LLC, located in LeRoy, Kansas, are slightly further from Tulsa than they are from the Kansas courthouses, however, they have not pled sufficient facts to show that travelling the slight additional distance would be a high burden.[3] See generally, Def.'s MTD. Additionally, none of the other factors articulated by Burger King weigh against granting jurisdiction.

---

[2] According to Google Maps, Parsons, Kansas, is 114 miles from the Tulsa, Oklahoma, courthouse; 128 Miles from the Wichita, Kansas, courthouse; and 149 miles from the Kansas City, Kansas, courthouse. Driving Directions, GOOGLE MAPS, http://google.com/maps (follow "Directions" hyperlink; then search starting point for "Parsons, Kansas" and search destination field for "Page Belcher Federal Building," "Wichita U.S. Federal Court," and "Robert J. Dole Courthouse" sequentially) (last visited 1/31/2023).

[3] According to Google Maps, LeRoy, Kansas, is 157 Miles from Tulsa, Oklahoma, 113 miles from Wichita, Kansas, and 103 miles from Kansas City, Kansas. Driving Directions, GOOGLE MAPS, http://google.com/maps (follow "Directions" hyperlink; then search starting point for "LeRoy, Kansas" and search destination field for "Tulsa, Oklahoma," "Wichita, Kansas," and "Kansas City, Kansas" sequentially) (last visited 1/31/2023).

Thus, because there are minimum contacts of the same type that gave rise to the controversy, and defendants have pled no facts establishing that exercising jurisdiction would result in a great burden or violation of fair play and substantial justice, the court finds it has personal jurisdiction over defendants Kerrie Gleue and Gleue Harvesting, LLC.

### ii. Frederick Bouwer

Second, the court finds that it lacks personal jurisdiction over defendant Frederick Bouwer. Defendants have not alleged any facts specifically establishing that Frederick Bouwer has any contacts with the state of Oklahoma. Frederick Bouwer was employed by Gleue Harvesting, LLC from April 3, 2021, to November 24, 2021. Def.'s MTD Ex. 3. During that period, the Shooks only have one piece of evidence indicating that Gleue Harvesting, LLC was conducting work in Oklahoma. Pl.'s Br. Ex. 5. But a single social media post that an employer has entered a state is not enough, without more, to establish that an employee shared in the employer's contact. The court may not exercise jurisdiction over an individual without any contacts, regardless of how close to the forum state the controversy takes place. Thus, the motion to dismiss for lack of personal jurisdiction as it pertains to Frederick Bouwer is granted.

### iii. All Other Defendants

Finally, the court finds that it lacks personal jurisdiction over the remaining defendants. The Shooks argue that the court should exercise jurisdiction over the Other Gleue Defendants out of an abundance of caution, suggesting that the "proper

Gleue entities would be sorted out during the discovery process and that any unnecessary parties would be dismissed at that time." Pl.'s Br. at 1 n.4. This process, without the establishment of a prima facie case that the court has jurisdiction over the Other Gleue Defendants, would offend traditional notions of fair play and substantial justice. The Shooks have not alleged any facts establishing that these defendants have contacts with Oklahoma, let alone enough for the court to exercise jurisdiction over them. See generally Pl.'s Br.; Def.'s MTD Ex. 2. Thus, the court lacks the jurisdiction to subject these entities to discovery in this dispute and the motion to dismiss, as it pertains to defendants Gleue Trucking LLC, Gleue Farms, LLC, Gleue Farms and Cattle, LLC, and R & H Gleue Inc., is granted.

**II.   Venue**

   **A. Applicable Law**

Defendants alternatively request that if not dismissed, the court should transfer this case to the District of Kansas. Def.'s MTD at 1. "For the convenience of the parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992)). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change

of venue." Id. (quoting Scheidt, 956 F.2d at 966). In considering a motion to transfer under § 1404(a), the Tenth Circuit weighs the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

Emps. Mut., 618 F.3d at 1167 (quoting Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991)).

**B. Analysis**

    **i. Defendants Plaintiff's Choice of Forum**

"[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." Emps. Mut., 618 F.3d at 1167 (alterations in original) (quoting Scheidt, 956 F.2d at 965). Nevertheless, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'" Id. at 1168 (quoting Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993)).

The Gleue Companies incorrectly frame this controversy as being entirely Kansas-centric with no material relation or significant connection to Oklahoma. The Shook family resides in Oklahoma as do many of the treating physicians. Pl.'s Br. at 17–19. The collision occurred near the border of Oklahoma, and the only witness is

also an Oklahoma resident who was travelling in Kansas. Pl.'s Br. at 18. Finally, defendants Kerrie Gleue and Gleue Harvesting, LLC conduct business in Oklahoma and use Oklahoma roads. See generally Pl.'s Br. Ex. 2–5. Thus, the Shooks' choice of forum weighs heavily against transfer.

### ii. The Accessibility of Witnesses and Other Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." Emps. Mut., 618 F.3d at 1169 (quoting Cook, 816 F. Supp. at 669). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" Id. (alterations in original) (quoting Scheidt, 956 F.2d at 966). The movant must identify "those witnesses with specificity" and "indicate[ ] the subject matter of their testimony." Id.

This factor also weighs against transfer. The Gleue Companies argue that it is less convenient for "nearly ten separate defendants" to travel to Tulsa, Oklahoma, than it is to "require a family to get in their car (as they did at the time of this accident) and drive to Kansas." Def.'s MTD at 23 (emphasis omitted). Considering Kerrie Gleue and Gleue Harvesting, LLC are the only remaining defendants, this argument no longer has merit. Furthermore, the Gleue Companies contend the District of Kansas is more convenient for emergency personnel in Parsons, Kansas, however, the Gleue Companies fail to allege facts with sufficient detail to satisfy the

14

requirements laid out by Emps. Mut., especially considering that Tulsa, Oklahoma, is closer to Parsons, Kansas, than any federal court in Kansas. Supra note 2. Additionally, the Shooks argue that the basic facts of the collision "do not appear to be in dispute" and that "[t]he likely focus of this case will center on the injuries sustained by the Plaintiffs." Pl.'s Br. at 18–19. The Shooks continue to outline several witnesses they intend to call, their relevance to the controversy, and how likely it is they would testify in Kansas. Id. at 19–20. This satisfies the Emps. Mut. requirements, and clearly establishes this factor against transfer.

### iii. The Advantage of Having a Local Court Determine Questions of Local Law

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." Emps. Mut., 618 F.3d at 1170 (citing Black & Veatch Constr., Inc. v. ABB Power Generation, Inc., 123 F. Supp. 2d 569, 581 (D. Kan. 2000)). Although the Shooks allege that the Gleue Companies violated Kansas tort law, specifically Kan. Stat. § 8-1523 (2014), it is unclear if the relevant legal issues are particularly unique or complex. In Rice v. Burlington Resources Oil & Gas Comp., the court found this factor weighed in favor of transfer as the parties disagreed about the statute of limitations. 2021 WL 5114311, at *4 (N.D. Okla. Mar. 16, 2021). Because the Gleue Companies have identified no such disagreement of law, this factor is irrelevant and weighs neither for nor against transfer.

### iv. Difficulties that May Arise from Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from

15

filing to trial, pending cases per judge, and average weighted filings per judge." Emps. Mut., 618 F.3d at 1169 (citing REO Sales, Inc. v. Prudential Ins. Co. of Am., 925 F. Supp. 1491, 1495 n.3 (D. Colo. 1996)).

Both parties acknowledge that in the wake of McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), congestion has increased significantly in the Northern District of Oklahoma. See Def.'s MTD at 24; Pl.'s Br. at 23. Nevertheless, the Shooks chose to bring this case in the Northern District of Oklahoma, knowing of the increased congestion. Additionally, this case is now assigned to a judge sitting by designation, thus the issues of congestion are mitigated. Accordingly, this issue does not weigh for or against transfer, as it is unclear how transfer may affect how speedily this case is addressed.

### v. Remaining Factors

The Gleue Companies have not identified any obstacles to a fair trial in Oklahoma or raised any questions regarding the enforceability of a judgment against it. Finally, the Gleue Companies have not claimed that any other practical considerations would make litigation in Kansas more easy, expeditious, or economical than litigation in Oklahoma.

### CONCLUSION

At this juncture, several defendants are dismissed due to a lack of personal jurisdiction, however, the District of Kansas likely would have personal jurisdiction over the dismissed defendants. Accordingly, the court will give plaintiffs the opportunity to decide whether they wish to acquiesce to the transfer of venue to the

16

District of Kansas or proceed in the Northern District of Oklahoma.  In the light of the foregoing, it is

**ORDERED** that defendants' motion to dismiss or, in the alternative, the motion to transfer venue to the United Stated District Court for the District of Kansas (Dkt. # 7) is **GRANTED in part and DENIED in part**.  The motion is granted to the extent that the court lacks personal jurisdiction over defendants Gleue Trucking LLC, Gleue Farms, LLC, Gleue Farms and Cattle, LLC, R & H Gleue Inc. and Frederick Bouwer; denied to the extent that the court has personal jurisdiction over defendants Kerrie Gleue and Gleue Harvesting, LLC; and it is further

**ORDERED** that Plaintiff is granted leave to either inform the court of its desire to transfer venue or confer with Defendants and file with the court a joint proposed scheduling order within 30 days hereof.

/s/ Jane A. Restani  
Jane A. Restani, Judge

Dated:    February 8, 2023  
              New York, New York